IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

\*

vs.   Case No. **1:20-cr-00319-CCB-1**

\*

Brandon Goforth

\*

\*\*\*\*\*\*

**MEMORANDUM AND ORDER**

      On February 10, 2021, Defendant filed a motion for review of this Court's October 9, 2020 detention order, asking for temporary release pursuant to 18 U.S.C § 3142(i) due to health concerns. (ECF No. 27.)  The Government opposed the motion on February 16, 2021. (ECF No. 30.)  Defendant filed his reply on February 18, 2021. (ECF No. 31.)  The Court finds that no hearing is necessary.  For the foregoing reasons, Defendant's motion is **DENIED**.

      On September 29, 2020, Defendant was indicted by a Grand Jury of this Court for possession of a firearm and ammunition by a previously convicted person.  (ECF No. 1.)  On October 9, 2020, after a detention hearing, this court ordered Defendant detained. (ECF No. 13.)  In so doing, this Court relied on the recommendation of Pretrial Services, Defendant's prior criminal history which included two drug distribution felony convictions and a conviction for first degree assault, the strength of the Government's proffer (which included post-Miranda statements of Defendant and statements made on recorded jail calls), and the nature of the allegations that Defendant shot wildly into a crowd.  *Id*.  Given this analysis, the Court concluded by clear and convincing evidence that Defendant's release posed a risk of danger to the community that could not be reasonably mitigated by any condition or combination of conditions of release.

      Matters of pretrial detention are governed by the Bail Reform Act, 18 US.C. § 3141, et seq. (the "BRA"). The BRA focuses the Court's inquiry on two issues: (1) a defendant's risk of nonappearance; (2) the danger that the defendant's release would pose to other individuals. Id. at § 3142(f). Congress then specified the criteria that this Court must weigh when assessing those two issues. See 18 U.S.C. § 3142(g). As noted above, this Court's concern when it ordered Defendant detained was focused on danger to the community based on its analysis of the BRA's § 3142(g) factors.

      As Defendant argues in the present motion, the BRA also provides that a defendant's health risk from detention (including COVID-19 risk) might, under appropriate circumstances, support temporary release under § 3142(i).  See, e.g., *United States v. Creek*, 19-036-CCB (ECF No. 421; May 1, 2020) (granting temporary release from the D.C. Jail complex due to defendant's underlying health conditions).  In such a motion, the burden is on a defendant to

show that those health concerns are "compelling," outweigh the other 3142(g) factors, and that the defendant's release does not, in turn, pose an increased health risk to the community. See, e.g., *United States v. Clark*, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); see also, *Creek*, *supra*, ECF 402 (April 15, 2020) (directing the District Court to consider "in the first instance the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).").

Defendant argues that he suffers from asthma, and that such condition puts him at increased risk for complications from COVID-19.  (ECF No. 27 at 5-7.)  It is true that the Centers for Disease Control ("CDC") has recognized that "People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19," and that "COVID-19 can affect your nose, throat, lungs (respiratory tract); cause an asthma attack; and possibly lead to pneumonia and acute respiratory disease." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (Last visited February 19, 2021).  Although Defendant has not submitted medical record evidence or proffered that he suffers from moderate to severe asthma, he does state that at the time of his detention, he was prescribed two inhalers, suggesting to the Court that, at the very least, his asthma is symptomatic and ongoing.  In any event, for purpose of its analysis, the Court will assume that Defendant's asthma puts him at additional risk for complications from COVID-19 infection.

Defendant devotes much of his briefing to describing the current conditions at the Chesapeake Detention Facility ("CDF") where he is currently detained, and how, despite notable previous success in containing the spread of COVID-19 through almost nine months of the pandemic, CDF's infection detection, control, and treatment measures have been unable to abate a significant increase in cases at the facility and, in some instances, significant accompanying sequalae.  This Court has, in several recent instances, included these deteriorated conditions at CDF in ordering both conditional release and temporary release pursuant to § 3142(i) where a defendant's health was particularly fragile and the traditional 3142(g) analysis was not otherwise significantly weighted towards detention.

But each case requires individual assessment of the particular person before the Court.  Here, Defendant points out that he has already contracted COVID-19, being diagnosed on January 18, 2021, and has since been released from quarantine. (ECF No. 27 at 1.)  Thankfully, it does not appear that Defendant experienced the severe complications that can be a risk for moderate or severe asthmatics such as pneumonia, acute respiratory disease or the need for hospitalization.  Nonetheless, according to Defendant, "He has been experiencing pain in his chest, his breathing has been more labored, and he is having trouble sleeping." *Id*. at 5.  Although Defendant had not been provided a refill for his inhaler at the time of his motion, causing him understandable anxiety, that has fortunately since been corrected and a new inhaler provided.  (ECF No. 31 at 1.)

Defendant's post-infection status puts him in a different category than other detainees who have yet to be infected and whose reaction to possible infection is therefore uncharted.  It is true that, at present, there is insufficient data for the CDC to offer guidance on the duration of

immunity post-infection. See https://www.cdc.gov/coronavirus/2019-ncov/testing/serology-overview.html (last viewed Feb. 19, 2021).  However, a recent study supports the conclusion that such immunity is present for approximately 95% of individuals for at least six months and perhaps longer.  See "Immunological memory to SARS-CoV-2 assessed for up to 8 months after infection," J. Dan, *et al.*, *Science* (Feb. 5, 2021).

In light of the above, Defendant has not carried his burden of demonstrating that the health risk to him of continued detention is sufficiently compelling to justify release and does not outweigh the traditional § 3142(g) factors previously considered by the Court.

Many of the arguments raised by Defendant go beyond the BRA--which is specifically focused on the statutory facts set out by Congress as they apply to *him*--and assert potential constitutional violations relating more broadly to conditions of confinement that presumably are common to all detainees at CDF—whether based on the Fifth, Sixth, or Eighth Amendments.  In that setting, a more typical remedy would be an order for changes in those conditions of confinement or perhaps transfer, rather than release. See, e.g., *Banks, et al v. Booth, et al.*, 2020 WL 1914896 (D.D.C. 4/19/20), at *13-16 (court ordering changes in conditions of confinement at detention facility after finding a likelihood of Fifth and Eighth Amendment violations relating to COVID-19 in entering temporary restraining order against officials running D.C. Jail in a class action lawsuit by detainees).  As in *Banks*, such arguments are better suited to a civil rights lawsuit or perhaps a habeas petition rather than a detention hearing for several reasons. Most fundamentally, the presence of such violations would prompt the Court to consider class-wide remedies short of release (as in *Banks*), yet the parties who could potentially provide such remedies—the officials who run the facilities--are not before the Court. Similarly, there are jurisdictional limitations on the ability of an Article One United States Magistrate Judge to address constitutional deprivations by such officials in the absence of a consent proceeding or appropriate District Judge referral.  Additionally, the absence of a full array of discovery tools in a preliminary criminal proceeding prevents a full record from being developed. Further, in the detention hearing posture, there is obvious tension between addressing Defendant's request for an assessment of his suitability for release in a timely fashion (here, within one day of the motion becoming ripe) yet providing enough time for the parties to investigate, retain experts, and otherwise develop their respective arguments. In sum, remedying facility-wide constitutional grievances common to many detainees as alleged cannot be optimally addressed in the context of a limited preliminary proceeding such as a detention hearing.

 2/19/2021  
Date

J. Mark Coulson  
United States Magistrate Judge



3